# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT HESSEE, individually and on behalf of a class of all persons and entities similarly situated, | : : : : | Case No. |
| Plaintiff, | : : | |
| v. | : : | JURY DEMANDED |
| BLACK DIAMOND ADMINISTRATIVE COMPANY LLC and AUTOMOTIVE SERVICES CENTER, LLC | : : : : | |
| Defendants. | | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Robert Hessee alleges that Automotive Services Center, LLC ("Automotive Services") sent pre-recorded telemarketing calls to his cellular telephone and those of other putative class members for the purposes of advertising Black Diamond Administrative Company LLC ("Black Diamond") goods and services, which is prohibited by the TCPA.

3. Because the calls to Plaintiff were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff bring this action on behalf of proposed nationwide a class of other persons who were sent the same illegal telemarketing calls.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Robert Hessee is an individual.

6. Defendant Automotive Services Center, LLC is a California limited liability company.

7. Defendant Black Diamond Administrative Company LLC is an Illinois limited liability company located in this District.

**Jurisdiction & Venue**

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. The Court has personal jurisdiction over the Black Diamond because it is a resident of this District. The Court has personal jurisdiction over Automotive Services Center because it worked with Black Diamond in this District to organize the calling conduct at issue. Moreover, upon information and belief, the agreement between Black Diamond and Automotive Services Center would have had any disputes between the two subject to Illinois law.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant Black Diamond resides in this District and organized the calling conduct at issue from this District.

**The Telephone Consumer Protection Act**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

17. Black Diamond markets and sells vehicle warranty services to consumers.

18. Black Diamond hires third parties, such as Automotive Services, uses telemarketing on these calls.

19. Automotive Services telemarketing efforts include the use of automated pre-recorded message calls.

<u>Call to Mr. Hessee</u>

20. Mr. Hessee is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21. On January 14, 2021, Mr. Hessee received a pre-recorded call on his cellular telephone number, (620) 762-XXXX.

22. The number called had been on the National Do Not Call Registry.

23. The pre-recorded message advertised warranty services.

4

24. The pre-recorded message stated, "Hi this is Alisha about important message about your warranty or service contract on your car. If you like to keep your coverage or extend your coverage, press…"

25. However, the company was not identified in the pre-recorded message.

26. In order to identify the party that called, Mr. Hessee responded to the pre-recorded message.

27. He was offered the Defendant's goods and services.

28. After the pre-recorded message, Mr. Hessee spoke to "Cedric Ford", who identified himself as a senior coverage specialist for Automotive Services Center.

29. Black Diamond's auto warranty services were promoted.

30. This included a promotion for various auto warranty coverage options.

31. The solicitation included a statement that the warranty services being promoted could be found at the website www.blackdiamondadmin.com.

32. That is a website owned and operated by Black Diamond.

33. Mr. Hessee had no prior relationship with the Defendants before this contact and did not consent to be called by the Defendants.

34. The privacy of Mr. Hessee and the putative class members was infringed upon because the pre-recorded telemarketing calls occupied their telephone lines from legitimate communications.

### Black Diamond's Liability for Automotive Services' Conduct

35. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

36. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules &*

*Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

37. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

38. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Black Diamond may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

39. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

40. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

41. Black Diamond knowingly and actively accepted business that originated through the illegal telemarketing call from Automotive Services.

42. By hiring a company to make calls on its behalf, Black Diamond "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

43. Moreover, Black Diamond maintained interim control over the actions of the party that made the call.

44. For example, Black Diamond had absolute control over whether, and under what circumstances, it would accept a customer.

45. Furthermore, Black Diamond had day-to-day control over the party that made the calls' actions, including the ability to prohibit it from using pre-recorded messages to contact potential customers of Black Diamond.

46. Black Diamond also gave interim instructions to the company that made the calls by providing (a) the states that they were permitted to call and (b) the contract that Automotive Services would have to issue.

47. Black Diamond also failed to do adequate due diligence regarding the system Automotive Services was going to be using to promote its services, as Automotive Services has been named in a lawsuit for violations of the TCPA.

48. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden

of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Statement

49. As authorized by Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

50. The classes of persons Plaintiff proposes to represent include:

<u>Automotive Services Class</u>

All persons within the United States to whom: (a) Automotive Services and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

<u>Black Diamond Sub-Class</u>

All persons within the United States to whom: (a) Automotive Services and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) that did or could have promoted Defendant's products or services; (c) to their cellular telephone number; (d) using an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

51. Excluded from the Classes are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

52. The proposed Class members are identifiable through phone records and phone number databases, which are with the Defendants or their agents.

53. The automated technology used to contact the Plaintiff is capable of contacting hundreds of thousands of people a day, and so the potential Classes members number in the thousands, at least. Individual joinder of these persons is impracticable.

54. Plaintiff is a member of the Classes.

55. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Automotive Services used a pre-recorded message to make the calls at issue;

    b. Whether Black Diamond is vicariously liable for the telemarketing conduct of Automotive Services;

    c. Whether the Defendants placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    d. Whether the Defendants' violations of the TCPA were negligent, willful, or knowing; and

    e. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

56. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same or similar dialing system and pre-recorded message on a cellular telephone line.

57. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the

Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58. In fact, the Plaintiff has foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

59. The actions of the Defendant are generally applicable to the Classes and to Plaintiff.

60. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

61. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

62. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

63. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using a pre-recorded message.

65. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

66. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using a prerecorded voice in the future.

### Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys,

*/s/ Anthony I. Paronich*
Anthony I. Paronich

Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

12